Appellant. Mr. Axsom, for the Appellant. Mr. Howlett, for the Appellant. May it please the Court, Counsel. Tony Axsom on behalf of Appellant Benjamin Grey and I'd like to reserve three minutes for rebuttal. Appellant Benjamin Grey seeks reversal of his convictions based on introduction of inadmissible evidence that prejudiced him. Specifically the government introduced evidence of a Superior Court civil judgment for conduct that also formed the basis of some of the charges here. The government also introduced evidence of other crimes, specifically about a bad check unrelated to the case here that Mr. Grey passed at a Nissan dealership. And the government introduced evidence of the impact of Mr. Grey's actions on his purported victims. To address the civil judgment first, Hector Williams testified that he sued Mr. Grey in Superior Court and got a judgment in the amount of $35,000 approximately, the same amount that Mr. Grey was alleged to have defrauded Mr. Grey. Counsel for Mr. Grey did not object to that, so it is reviewed for plain error. But the judgment itself, or testimony about the judgment and the amount, were hearsay. And it was admitted without any exception to the hearsay rule. So it was, it plainly should not have been admitted. Was the judgment itself entered into evidence or just the testimony about it? Just the testimony about it. And there was no objection, so that's on plain error review, correct? That's correct. And that judgment, obviously Hector Williams was the first witness, but that judgment obviously prejudiced Mr. Grey throughout the trial because it confirmed for the jury at a very early stage in the trial that another tribunal had already found him liable for the same acts, same money, same allegation of fraud that this jury was to decide. And there was no mitigation of this in any way. There was no mitigation that came after Mr. Williams. The, how do you make it, how do you make the plain error, I mean I agree it was clearly wrong, but how do you make the plain error argument? If the court is referring to the prejudice from the plain error, I think the prejudice when you admit a judgment is inherent, as other courts have found. Judicial findings in particular have great weight for jurors. They were not told much about this, but they were told that there was another judgment for what Hector Williams was testifying about in another court. And frankly that's all they needed to know. It's inherently prejudicial because from the outset the jury has confirmed, the witness has confirmed for the jury that there was wrongdoing. And the jury shouldn't be approaching it with a bias that there was already wrongdoing. The jury should be approaching it with an open mind and to determine for themselves whether there was wrongdoing. When you say it was inherently prejudicial, do you mean it was inherently prejudicial in that it was damaging or do you mean it was inherently prejudicial in that any time a judgment is entered it's per se plain error? No, it was damaging. I don't think that it would necessarily always be prejudicial, but in this case, in these circumstances, when there's not much daylight between what the witness is testifying and the judgment that he says he got for the actions that he's testifying about, it was damaging for Mr. Gray in this specific case. So in that sense it was impossible to separate out the prejudice from any other analysis of the evidence in the case. Mr. Gray was also prejudiced by the other crimes evidence, specifically that he presented a check at a Nissan dealership that had insufficient funds to purchase a dealership. And this evidence was irrelevant to the charged offenses. It was not a separate scheme, but it was just an act of bad character, an act of dishonesty if you credit it fully that Mr. or if you assume that Mr. Gray knew that the check that he wrote was on an account that had insufficient funds. The government did not prove that, but that was the implication of the testimony. There was no allegation of Mr. Gray passing a bad check here or trying to get something by passing a bad check here. It was the exact opposite. Mr. Gray was offering to sell cars and taking money, and the allegation was that he was not then providing the cars. So the passing of a bad check in a completely separate incident... Well, wasn't it the same bank account? It was the same bank account. It was the same bank account. Yes. Right? It was his business bank account. Right. That's correct. So it wasn't completely unrelated, right? Doesn't it show intent to use that bank account? Well, it certainly shows his intent to use that bank account, but that's exactly why it's so prejudicial, because what does it show about his use of that bank account? That every time he uses that bank account, it's fraud? That he's a person that is a fraudster? Well, that's propensity evidence. That's precisely the purpose for which this type of testimony is forbidden. That's what 404B prohibits. So this evidence, just like the evidence in the civil judgment, should have been excluded. It should have been excluded under 404B. I think the district court's initial impulses in the pretrial hearing were to exclude it and to only let in 404B that was of similar acts by Mr. Gray. But the district court ultimately allowed the government, and I'd submit that by allowing the government to choose which of the five other crimes it had submitted was an arbitrary act, and just demonstrates that this was an abuse of discretion to allow this particular other act in as evidence. How is it prejudicial given all the other evidence in the case? I'd say that it's prejudicial in the same way that the civil judgment. This, although Mr. Gray didn't testify, this tarnished his character. And if the jury was to have any doubt about the evidence that the government had presented, this removed any qualm about finding... Well, maybe not, because as you said, it wasn't that closely related. And, you know, people write checks that balance, they shouldn't, it's against the law, but it's a more common type of infraction than the type of stuff he was in charge of. So, I don't know, would it actually be all that prejudicial? It could be wrong, but it has to be prejudicial as well. Well, I'd say, the first thing I'd say is that under Rule 403, there's a balancing. And you're weighing the probativeness, which is almost zero in this case. I'm just saying, assuming it was aired to be admitted, so assume the district court aired either under 404 or the 403 balancing, whichever way you want to look at it, how is it prejudicial given all the other evidence in this case? Well, just as the court noted, people shouldn't write checks that are going to balance. And the purpose of this was to tarnish Mr. Gray. And the jury sitting there would logically, there may be many innocent explanations. No innocent explanation was offered by the defense. And the government didn't elaborate in order to offer it, in order to allow for an inference of an innocent explanation. The only explanation, the only inference to be drawn from this testimony was negative. So the jury also got an instruction, a limiting instruction with this evidence, right? Yes. But I'd submit that the limiting instruction did not do much to aid the jury because this evidence didn't actually go to knowledge, intent, or absence of mistake. So to the extent they got a limiting instruction that said, you are only to use it for this purpose, and this evidence didn't prove any of those things, the instruction had no effect on them. And the natural impulse, again, this is why 404B is so damaging, the natural impulse would be to assume that because Mr. Gray was a fraudster, or in the government's words, a con man, they should believe that any actions he took in this case were fraudulent. Okay. Anything else? No. Okay. Thank you. Good morning, or I guess good afternoon, and may it please the Court. Christopher Howland for the United States. The trial court did not abuse its discretion in any of the evidentiary rulings that are challenged on appeal by appellant. Taking up the going in reverse order from appellant's presentation, the issue with the dealership, I'll call it the Chevy Chase dealership, we disagree that it was not probative. If you read the way that it came out, Mr. Coley has testified that essentially, our argument on that point is that he ignores that, saying that it's not probative ignores the record. What Brown says is that there has to be a substantive and a temporal connection in order for it to meet the threshold level of similarity. We posit that the testimony meets that test in this case. It was the same exact, as the Court pointed out, the same exact entity that was at issue with the charged accounts in the indictment. It was the same time frame, so it was both substantive and temporally related. And it demonstrated that, or it was a reasonable inference for the jury to make, that if this account had been closed a year before, that he knew that it was closed, and he knew that the Planet Cars, which was the fake entity, was not a legitimate business. And so it made it more likely that in the other instances, the use of the same fake entity to perpetrate these frauds against these individuals, it made it more likely that he specifically intended to commit those crimes. I just don't understand that argument. So in the Williams and Berthelsen situations, he used an open Planet Cars account. Both of those involved open Planet Cars accounts, and there was testimony from BB&T that he had two accounts. So I just don't understand your argument that the fact that he was using a closed account somehow shows that this Planet Cars thing was a fraud. It was shown to be a fraud through other means, but it was involved open Planet Cars bank accounts. So I don't understand. I just don't understand that argument on the merits of whether it was relevant. Sure. I guess I would have a couple of responses. First is that if it's the same business entity that he was using, and he used it in one circumstance and it was open, but he used it in a fraudulent manner, if he used it in the second one and he used it in a fraudulent manner, or if there was a reasonable inference that he was using it in a fraudulent manner that the jury could make, I think it makes it more likely that he knew that the Planet Cars was not a legitimate business entity. And so it sort of is neither here nor there that the account was closed versus the account was open. The issue about it being closed for a year just demonstrates that he knew when he wrote the check that Planet Cars was not a valid business entity. No, but that doesn't connect it to this case, which involved the use of open Planet Cars accounts. And I had understood the argument in district court to be the fact that this had a closed account showed that Planet Cars was a fraudulent entity, and that just didn't make sense in light of the evidence that was put into the case as to the other frauds. Well, again, I think I would go back and say that it made it more likely than not that Mr. Gray was willing to use this Planet Cars entity as a fraudulent business entity. So is your position that if he used a Planet Cars account for any other type of fraud, anything that would qualify as common law fraud, it automatically could come in just because it shows he does bad things with that account? I think if it showed that he was willing to portray himself as a car dealer using this specific car dealership— Well, he was a car purchaser in the Chevy Chase case. He wasn't trying to sell cars or acquire cars for someone else. So it was actually quite a different—it was just buying a car without the money to pay for it, which is quite different from what the type of fraud is that was going on with all the other individuals in this case. Sure. Well, so again, I would just point out that Brown— the threshold for similarity is fairly low. This court and others have made clear that when it comes to these kinds of crimes, these fraud crimes, the difficulty of proving intent means that under 404B there's a low threshold. I think they call it a liberal policy. And it's our position that— Well, it's got to be more than low or not. It's got to be enough to make sure that we're not just showing that this person's a fraudster with bank accounts. And it seems to me that's closer to what was going on in this case. Well, even assuming that there was an error under 404B, it's the government's position that it was harmless in any event. As we point out in our brief, virtually every aspect of the government's evidence was undisputed. It was, as Your Honor pointed out, overwhelming. The court issued, as Judge Srinivasan pointed out, four— not one, but four strong and emphatic limiting instructions about the use of this 404B evidence. There was never any objection to those limiting instructions, right? There was never any what? The defendant's never objected to the limiting instructions as not being rigorous enough? Yeah, no, that's right. There was no—we think that you should use a stronger or a better limiting instruction. It's our position that it was brief. This witness, Mr. Coleus, was fairly brief in terms of the overall presentation of the evidence in the case. It wasn't a focus of the opening and the closing. It wasn't so dramatic as to rivet the jury's attention. Those are all the sort of phrases that you think of whenever you think of harmless. I also just want to very quickly point out that with regard to this 404B evidence, this notion that the trial court was arbitrary in saying pick two, if you read the transcript of the motions hearing, I think that that's belied by the record. The court was clearly trying to figure out the way that these additional pieces of evidence, for example, the Chevy Chase dealership, how did it fit into what was the relevance? And I think the court said, okay, well, now that I understand the relevance, I'm worried about there being too much 404B, so pick two. So I just wanted to point that out. I did want to respond briefly to this issue about the default judgment. Even assuming that there was some impropriety about admitting the default judgment, as the court pointed out, this is a plain error standard of review. And I just want to counsel. Counsel made a pretty strong argument, though, about why it was just inherently prejudicial. Didn't you think? Actually, I was going to just read the three lines of transcript that came out. There were three lines, basically, and this is from the transcript of the 16th, line 266 to 67. So when you sued the defendant, what happened to that lawsuit? I received a judgment. Question, did the defendant come to court? No. And how much was that judgment, if you remember? Approximately $35,000 and some interest or something like that. That's it. There were three pieces of evidence over the course of a four-hour. It's up to the jury to just conclude from that that, you know, he didn't come to court because he was guilty and he got a judgment of $30,000. Well, I think, you know, one of the arguments. I mean, actually, you know, the shorter it is, the more effect it could have on the jury because it's just three crisp sentences. Well, I think that, you know, because we're under a plain error standard of review, first of all, this court, as far as I'm aware, has never held that civil judgments are per se incorrect or improper. Well, it was also mentioned in the opening by the prosecutor, so we can't just look at those sentences. The jury was introduced to this case and this defendant with, by the way, another court has already found him responsible for the same fraud against Mr. Williams. Well, I'm not sure that you can make that inference. I think that, you know, appellant's brief tries to hem on both sides of the line, which is to say that both found, you know, necessarily that the superior court found that he was guilty of this civil fraud, but also, you know, there was no instruction to say what a default judgment was, you know, and so therefore it was improper for the jury to speculate. I don't know how speculation it is to say that there's a judgment against him. And the opening was, if you have a problem, I suggest you take it up in a court of law. Mr. Williams does exactly that. He sues the defendant in D.C.'s superior court for $35,444. Defendant never shows up to court. Mr. Williams gets a default judgment against the defendant. That's what was said at opening, so we have to add that in. That's setting up the whole case as someone had a problem with this, took him to court, and they got a judgment against him for the exact amount you're going to hear about later. Right. So, but I would say a couple of things. That's not speculation. That doesn't require much speculation by the jury. Well, I mean, if a person doesn't show up, you know, I think that you could – there's another reasonable inference that the person just didn't show up and it's not a judgment on the merits. I think a default judgment – That's a pretty sophisticated point for a jury. There was no instruction on that at all. Well, all the jury knew is that Williams sued him and got a judgment in the full amount. That's all the jury knew. I mean, maybe a juror said, well, wait a minute. It says a default judgment, he didn't show up. Maybe that – that's a lot to assume a jury would understand without any instruction at all. Well, I think that Your Honor's point makes one of our points is that there was no instruction because there was no objection and – Well, that's why we're – of course there wasn't an objection. I mean, if there had been an objection, we wouldn't be talking about plain error. Right. So that doesn't get you anywhere. If the court is – I mean, it's our position that it was not improper for this evidence to come out. But if the court is, you know, inclined to think that it was error despite the cases that we cite, we – it's our position that it can't be a plain error. This court, as I said, has never made that kind of a ruling. Okay. There was no request for an instruction or an explanation. It wasn't even mentioned in closing. I understand that it was mentioned in opening, but lawyers' arguments are not, you know, evidence that – for the jury to consider. And I believe that there was a standard instruction that the jury was, you know, informed about that point and jurors are presumed to follow those instructions. And, again, this wasn't dramatic or inflammatory. As I read just a moment ago, this was three lines of testimony. It wasn't mentioned again in the closing at all. And so it's hard to say that that would rise to the level of affecting someone's substantial rights or, you know, infected the integrity or the fairness of the trial, the overall proceeding. So it's our position that it can't meet plain error standard – or the plain error review either. Okay. Thank you. If the court has no other questions, we could ask. No, we have no other questions. Thank you. Let's see. Mr. Axelman's out of time, right? Okay. You can take two minutes. And would you start by explaining how we can rule for you on the default judgment issue without essentially adopting a per se rule that evidence like that is always plain error? Or do you think it should be a per se rule? Let me ask you that. Should it be a per se rule and if not – The reason I have hesitation is because evidence that another court has ruled on an issue that the jury is supposed to rule on is very powerful. So it should be. I actually can't think of anything more powerful. So you want us to adopt a per se rule? I don't want – I don't think that it's necessary to adopt a per se rule. Well, how would we do that with – how would we decide this case in your favor and still leave open the possibility that other cases might not be plain error? What would we say is so unique about this case? How would we leave anything open? Well, as the government pointed out, there – the jury did not know much about the default judgment here except that there was a judgment and that it went to the same amount that the government was alleging Mr. Gray defrauded Mr. Williams of in this case. Where the facts are so closely related and the jury has basically been informed of the identical situation, it becomes – it's very powerful. I wish that – But that – I mean, a per se rule would mean that it wouldn't even matter how much evidence there were of the charged conduct. That becomes – that means if you just have two lines of testimony introducing a default judgment, then no matter how much evidence there is of guilt, it still has got to be reversed. Even if there was no objection, it's a substantial injustice. Well, I'm not – I suppose the court could still do a more fact-based analysis in this case regarding whether the government met its burden of proof beyond a reasonable doubt separate from the civil judgment evidence. And in this case, we do know that Ms. Bertelsen filled out three loan applications in the span of 30 days and behaved in a way that – that she knew what was going on and she had left it all in the defendant's hands. But there was reasonable – there was a reason to doubt that because common sense tells us you don't fill out three loan applications at the same time. That when you sign your name on legal documents, you make sure that what you're saying is true and there were misstatements on those documents. Whether she directed it or she testified Mr. Gray did, I think that there was still some room for the jury to doubt there. But when the jury is told that Mr. Gray has already lost in very similar circumstances against another victim in civil court, that room to doubt what they've been told specifically with regard to Ms. Bertelsen vanishes. It's just – I don't want to say per se, but it is very difficult to overcome that type of testimony that the defendant has already lost. Sure, it doesn't have to be long. You come in, you say he already lost, and therefore he should lose here too. And I think jurors become more comfortable, whereas if they had any reason to doubt before then or they were approaching the evidence with an open mind, it becomes closed. Well, maybe the per se rule should be that if it had gone – if there had been a judgment as opposed to a default judgment, that would be per se plain error. But here – I know this doesn't help your case, but here it's always possible, as counsel for the government said, that the jury understood that, hey, this was just a default judgment. There was no judgment by the court that he did this. He just didn't show up. Just as the court pointed out, the jury could just as easily decide that – I realize I pointed that out. I was just asking you, your reaction. I mean, that's – whether it's a default judgment or a judgment, those niceties are probably lost on a jury. What they hear, what they translate is he lost before in a court, then why should I give him the benefit of the doubt on anything that he says or any challenge he makes to the evidence here. Thank you. Thank you, Your Honor. The case is submitted. Thank you both.
judges: Tatel, Srinivasan, Millett